Matter of K.Y.Z. (W.Z.) (2024 NY Slip Op 03458)

Matter of K.Y.Z. (W.Z.)

2024 NY Slip Op 03458

Decided on June 25, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 25, 2024

Before: Kern, J.P., Singh, Scarpulla, Pitt-Burke, Higgitt, JJ. 

Docket No. B18526/17 Appeal No. 2551 Case No. 2023-00014 

[*1]In the Matter of K.Y.Z., W.Z., et al., Respondents-Appellants, Good Shepherd Services, Petitioner-Respondent.

Tehra Coles, Center for Family Representation Inc, New York (Emily S. Wall of counsel), for W.Z., appellant.
Law Offices of Lewis S. Calderon, Jamaica (Lewis S. Calderon of counsel), for Q.Y.Z., appellant.
Geoffrey P. Berman, P.C., Larchmont (Geoffrey P. Berman of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Andrew T. Ford of counsel), attorney for the child.

Order of fact-finding and disposition (one paper), Family Court, New York County (Valerie A. Pels, J.), entered on or about December 6, 2022, which, upon findings that respondent father permanently neglected the subject child and that respondent mother is unable to care for the subject child presently and for the foreseeable future due to mental illness, terminated respondents' parental rights to the subject child and transferred the child's care and custody to petitioner agency and the Commissioner of Social Services of the City of New York for the purpose of adoption, unanimously affirmed, without costs.
Clear and convincing evidence, including expert testimony from the court-appointed clinical psychologist who examined the mother and reviewed all her available medical records, supported the determination that the mother is presently and for the foreseeable future unable to provide proper and adequate care for the child by reason of mental illness (Social Services Law § 384-b [4][c]; 6[a]; see Matter of Jasmine Pauline M., 62 AD3d 483, 484 [1st Dept 2009]). The psychologist's expert testimony demonstrated that the mother suffers from schizophrenia, which affects her ability to parent and places the child in danger of being neglected if returned to her care (see Matter of Muhamad Omar W. [Jessica W.], 200 AD3d 630 [1st Dept 2021], lv denied 38 NY3d 904 [2022], cert denied  US , 143 S Ct 461 [2022]; Matter of Jeremiah M. [Sabrina Ann M.], 109 AD3d 736, 736 [1st Dept 2013], lv denied 22 NY3d 856 [2013]). The psychologist based her opinion on interviews with the mother and review of her medical records spanning about 10 years, and testified that access to other recent treatment records would have been helpful but was not necessary. The mother did not call any witnesses or offer any rebuttal evidence to counter the psychologist's expert opinion (see Matter of Ariella D. [Sharon D.], 150 AD3d 620, 621 [1st Dept 2017]). The court properly drew a negative inference from the mother's failure to testify (see Matter of Alford Isaiah B. [Alford B.], 107 AD3d 562 [1st Dept 2013]). Contrary to the mother's argument, there is no requirement that the agency show that it made diligent efforts to reunite her with the child when it seeks to terminate parental rights by reason of mental illness (see Matter of Roberto A. [Altagracia A.], 73 AD3d 501, 501-502 [1st Dept 2010], lv denied 15 NY3d 703 [2010]).
As for the father, clear and convincing evidence supports the determination that, despite the agency's diligent efforts, he permanently neglected the child by failing to consistently maintain contact with or plan for the future of the child for a period of one year after the child entered foster care (see Social Services Law § 384-b[7][a]). The agency showed it made diligent efforts to encourage and strengthen the parental relationship by, among other things, developing a plan for appropriate services and referring the father for a parenting skills class, [*2]dyadic therapy to improve and strengthen his relationship with the child, scheduling regular visitation, providing him with MetroCards to visit the child, assisting him in obtaining housing, and regularly meeting with him (see Social Services Law § 384—b[7][a], [c], [f]; Matter of Antonio James L. [Eric David L.], 156 AD3d 554, 554 [1st Dept 2017]; Matter of Felicia Malon Rogue J. [Lena J.], 146 AD3d 725, 726 [1st Dept 2017]; Matter of Yasmine F. [Junior F.], 145 AD3d 455, 455 [1st Dept 2016], lv denied 29 NY3d 973 [2017]).
The agency adequately addressed the language barrier by using Mandarin interpreters to communicate with him and referring him for dyadic therapy and a parenting skills class that were provided in Mandarin, which he understood (see Matter of Chelsea C. [Bethania C.], 84 AD3d 504 [1st Dept 2011], lv denied 17 NY3d 705 [2011]). Although the agency placed the child in foster homes that spoke Spanish and English, it showed that there was no foster home available in which Mandarin or Foochow were spoken that also could handle the child's extensive special needs. The agency urged the father to attend classes to learn English, but he refused to do so.
Despite the agency's diligent efforts, the father failed to plan for the child's future during the relevant time period, as he visited the child only about once a month before the petition was filed (see Social Services Law § 384-b[7][a], [f]; Matter of Alexander R.H. [Renzo N.H.], 201 AD3d 465, 466 [1st Dept 2022], lv denied 38 NY3d 903 [2022]). To the extent the father received dyadic therapy and completed a parenting class, there is no evidence that he gained insight into his parental decisions or the mother's inability to be a caregiver for the child (see Matter of Julianna Victoria S. [Benny William W.], 89 AD3d 490, 491 [1st Dept 2011], lv denied 18 NY3d 805 [2012]).
A preponderance of the evidence demonstrates that it was in the child's best interests to be freed for adoption (see Matter of Leroy Simpson M. [Joanne M.], 122 AD3d 480, 481 [1st Dept 2014]). Contrary to the father's contention, a suspended judgment was not warranted here, because the child was living in a loving foster home, where his extensive special needs were being met, and his foster mother wanted to adopt him (see Matter of Angelica D. [Deborah D.], 157 AD3d 587, 588 [1st Dept 2018]; Matter of Fernando Alexander B. [Simone Anita W.], 85 AD3d 658, 659 [1st Dept 2011]). Furthermore, the father failed to demonstrate that he could ensure that the child's special needs would be met if his son were in his care.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 25, 2024